METTE JORGENSEN, Plaintiff-Appellee, v. DIANA WHITESIDE *et al.*, Defendants-Counterplaintiffs (The City of Chicago, Defendant and Counter-defendant-Appellant).

First District (4th Division)   Nos. 1—90—3218, 1—90—3247 cons.

Opinion filed June 30, 1992.—Rehearing denied August 27, 1992.

Raymond R. Pesavento, of Bullaro, Carton & Stone, of Chicago, for appellant.

John D. Cooney, of Cooney & Conway, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arises from injuries Mette Jorgensen, plaintiff, sustained after she was struck by a shuttle bus at the O'Hare International Airport terminal in Chicago. Plaintiff filed a negligence action in the circuit court of Cook County against the City of Chicago (the City), defendant, and codefendants Diana Whiteside, C.W. Transportation Services, Tri-State Tours, Inc., and River Trails Transportation. The City filed a motion to dismiss (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) on the grounds that it was immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1987, ch. 85, pars. 3—102, 3—103, 3—104, 3—108). The trial court denied the motion and the case proceeded to trial. The jury returned a verdict in favor of plaintiff and against all defendants, including the City. On appeal, the issues are (1) whether the trial court erred in finding that plaintiff properly stated a cause of action against the City pursuant to the Act, and (2) whether the trial court erred in denying the City's motion for a directed verdict.

We affirm.

On January 10, 1988, plaintiff returned to the United States from her home in Denmark to study chiropractic medicine in Davenport, Iowa. Plaintiff arrived at the temporary international terminal (known as Terminal 4), of O'Hare Airport and proceeded to the chartered Tri-

State bus that was parked in the bus loading zone. She was standing in an area designated by the City as the appropriate bus loading zone. The bus operator directed her to load her luggage in the bay compartment on the driver's side of the bus. Plaintiff proceeded to the driver's side of the bus and placed her luggage into the bay. During this time, an O'Hare shuttle bus proceeded through the reconfigured through lane. As plaintiff straightened up, the shuttle bus entered the unprotected bus loading zone and struck her. She sustained injuries which resulted in the amputation of her left leg.

The City had undertaken the design of the temporary terminal in 1985. The international terminal was temporarily located inside the old parking garage structure and the hotel road was converted into passenger vehicle driveways, parking stations, and loading zones. The taxicab and limousine loading zone was located on the left side of a single lane of through traffic, while the bus loading zone was situated on the right side. The design of the terminal resulted in passengers having to load their luggage while standing in direct proximity to the single lane of through traffic. Unlike any other terminal design, the temporary terminal had no separation of arrivals and departures for the vehicle driveways. In addition, the curved roadway required vehicles to turn continuously toward the bus loading zone as opposed to away from that loading zone.

■ Plaintiff alleged that pursuant to section 3—103 of the Act, the City owed plaintiff a duty to maintain its property in a reasonably safe condition in the adoption of a plan to improve property. Section 3—103 provides that a local public entity is liable if, after the execution of a plan or design for the improvement to public property, "it appears from its use that *** it has created a condition that *** is not reasonably safe." (Ill. Rev. Stat. 1987, ch. 85, par. 3—103.) Plaintiff alleged that the City undertook a plan to relocate the international terminal and located the bus loading zone in such a manner as to create a condition that was not reasonably safe.

At trial plaintiff alleged that the City was aware that the temporary reconfiguration exposed the loading zones to through lane traffic. As a result, plaintiff alleged the Department of Aviation installed barricades along the limousine and taxicab lane to prevent vehicles from coming into the lane and to separate passengers from the dangers of the through lane traffic. The City did not, however, provide barriers on the right side of the through lane where the bus loading zone was located. Plaintiff also presented evidence that the City had adopted public safety legislation which required the presence of "load zone" attendants to monitor the loading of buses. On the day plaintiff was

injured, there were no load zone attendants on duty despite the fact that an O'Hare ground supervisor had requested their presence at the loading zones.

The case proceeded to trial and the jury returned a verdict in favor of plaintiff and against all defendants. On appeal, the City contends that the trial court erred in denying its motion to dismiss on the grounds that plaintiff failed to state a cause of action against the City. Ill. Rev. Stat. 1987, ch. 110, par. 2—615.

A motion to dismiss for failure to state a claim should be granted only if the pleadings fail to set forth facts which will entitle the plaintiff to recovery. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504.) In reviewing whether a motion to dismiss is proper, "all well-pleaded facts will be regarded as true and all reasonable inferences should be construed in plaintiff's favor." *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 82.

To properly plead a cause of action in negligence, a plaintiff must allege the existence of a duty, a breach of that duty and an injury proximately resulting from the breach of that duty. (*Ward v. Community Unit School District No. 220* (1991), 213 Ill. App. 3d 1008, 1011.) Section 3—102(a) of the Act, which sets forth the City's duty to maintain its property, provides as follows:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).

A public entity has a duty to maintain its roadways in a reasonably safe condition and to warn of a condition which endangers the safe movement of traffic. (*Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 736-37.) Furthermore, the duty extends to make public improvements, once undertaken, reasonably safe. (Ill. Rev. Stat. 1987, ch. 85, par. 3—103; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 87.) "Whether the defendant owed a duty to the plaintiff is a question of law to be determined by the court." *Smith v. County of White* (1989), 191 Ill. App. 3d 569, 574.

■ Initially we note "that where there is no duty owing to a plaintiff under section 3—102 of the Governmental Tort Immunity Act, no duty exists under sections 3—103 or 3—104 for allegedly creating an unreasonably dangerous condition and failing to warn of that danger, respectively." (*Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 832; see also *Curtis v. County of Cook* (1983), 98 Ill. 2d 158.) We must therefore determine whether plaintiff was an intended and permitted user of the City's property under section 3—102(a).

The City contends that plaintiff was not an intended and permitted user of the Terminal 4 roadway under section 3—102(a) of the Act. The City maintains that since plaintiff was using the street as a walkway, it is immune from liability under the Act. The City cites several cases where this court has held that a municipality is immunized from liability where a pedestrian is injured while using a public street as a walkway. (See *Risner*, 150 Ill. App. 3d 827 (pedestrian was struck by a bus while crossing the street in the middle of the block); *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78 (pedestrian was struck by an automobile while crossing a highway where there was no crosswalk); *Ramirez v. City of Chicago* (1991), 212 Ill. App. 3d 751 (plaintiff was injured as she stepped into the street while attempting to sweep the curb portion of the street).) However, we believe the City's argument is misplaced. Each of the cases cited by the City involved a plaintiff who was injured while in an area not designated for pedestrian use. The case at bar is distinguishable in that the City specifically designated the property where plaintiff was injured as an area intended for the loading of vehicles.

■ Our supreme court has stated that in order "[t]o determine the intended use of the property involved ***, we need look no further than the property itself." (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 426.) We believe the evidence established that plaintiff was an intended and permitted user of the City's property. According to the Municipal Code of Chicago, a loading zone is defined as "[a] fixed area on any roadway parallel and adjacent to the curb and designated by official traffic signs as the loading area for a particular vehicle type for the expeditious loading of passengers and their baggage." (Chicago Municipal Code §13—1 (1986).) The City's own witnesses, ground transportation supervisor Michael Shea and expert witness Willard Alroth, testified that on the day of the injury the property was designated as a loading zone. At the time plaintiff was injured, she was standing in an area specifically designated by the City as a loading zone and was using the area for its intended pur-

pose. We therefore find that plaintiff was an intended and permitted user of the City's property.

We are not persuaded by the City's argument that the loading zone applies exclusively to vehicular use and does not contemplate pedestrian use. We believe that *Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, is instructive on this issue. In *Di Domenico*, plaintiff lawfully parked his car parallel to the street curb and fell into a hole as he was retrieving items from his car trunk. The court found that the public entity had a duty to protect pedestrians from injury when walking to their lawfully parked vehicles. (*Di Domenico*, 171 Ill. App. 3d at 295.) The court stated that "[i]t defies common sense to conclude that such local entities did not contemplate and intend that the operator of the vehicle *along with passengers* would use the street area around the parked vehicle for ingress and egress to and from their vehicle." (Emphasis added.) (*Di Domenico*, 171 Ill. App. 3d at 295-96; see also *Torres v. City of Chicago* (1991), 218 Ill. App. 3d 89.) In designating the area where plaintiff was injured as a loading zone, the City must have recognized the necessity of bus operators and passengers using the area to load luggage.

■ The City next contends that it owed no duty to plaintiff to maintain the loading zone in a reasonably safe condition under section 3—104 of the Act. Section 3—104 provides that a local public entity is not liable for injuries "caused by the failure to initially provide regulatory traffic control devices, *** traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1987, ch. 85, par. 3—104.) The City also maintains that it is immune from liability for its alleged failure to provide personnel to supervise plaintiff's activities on the roadway pursuant to section 3—108. Ill. Rev. Stat. 1987, ch. 85, par. 3—108.

However, the City's reliance on sections 3—104 and 3—108 is misplaced and the immunities contained therein do not apply. Plaintiff's negligence action was predicated on a finding that the City undertook a plan or design that created a condition that was not reasonably safe in violation of section 3—103.

The evidence in this case was not that the City initially failed to provide barricades as contemplated by section 3—104, but that it located the through-lane traffic in a manner that was dangerous. At trial, plaintiff presented evidence that the City erected barricades on the left side of the through-lane traffic to protect the limousine and taxicab loading zone, but not on the right side to likewise protect the bus loading zone. Plaintiff alleged that the City was aware of the dangerous condition created by leaving the right side of the through lane, where the bus loading zone was located, exposed to traffic. Plaintiff

further alleged that the City's failure to exercise reasonable care in the execution of the relocation and placement of the bus loading zone forms the basis of liability.

Citing *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, and *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, the City maintains that it is immune from liability for failing to provide barriers. However, we find these cases distinguishable from the case at bar. In both *Newsome* and *Ross*, the public entity had not executed a plan for public improvement which created a condition that was not reasonably safe. The *Ross* court stated that a municipal corporation could only be liable when it acts to provide public improvements which create an unreasonably dangerous condition. (*Ross*, 168 Ill. App. 3d at 89.) Here, the City had undertaken a public improvement to relocate the international terminal and located the bus loading zone in a manner that the jury found was not reasonably safe.

Similarly, evidence that the City failed to provide a bus loading zone attendant at the terminal was introduced to establish that the City failed to exercise ordinary care with respect to an undertaking which it had chosen. (*Ross*, 168 Ill. App. 3d at 87.) Here, the City had undertaken to supervise the control of vehicular traffic, the loading and unloading of passengers by taxicabs, buses, and other public passenger vehicles, and the parking of taxicabs and buses at the airport. (Chicago Municipal Code §13–1 (1986).) Pursuant to this ordinance, the commissioner of aviation adopted regulations regarding the loading and unloading of vehicles at the terminal. The regulation defines a loading zone attendant as "[a]ny person employed by the City of Chicago to monitor vehicles' loading of passengers and their baggage." (Chicago O'Hare International Airport Public Traffic Regulations par. 1.4.) Section 4.6.7 of the regulations further required that these personnel be on duty during the time plaintiff was injured.

Where a local entity does not undertake to supervise any activity, it cannot be held liable pursuant to section 3–108. However, in this case, the City by its own ordinance undertook to supervise the loading and unloading of passengers in the terminal. The violation of a public safety ordinance may be used as evidence that the City failed to exercise due care to an intended and permitted user of the City's property. (See *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 295.) Plaintiff alleged that the City's failure to provide bus loading zone attendants on the day she was injured was in violation of its own ordinance and was *prima facie* evidence of negligence.

Plaintiff was entitled to establish that the City was aware of the alleged dangerous condition and that it failed to take reasonable pre-

cautions to warn or protect plaintiff from the dangerous condition. The City may not escape liability from section 3—103 of the Act by raising the immunities contained in sections 3—104 and 3—108. Plaintiff is entitled to present evidence that the City, by its action or inaction, executed a plan for the improvement of public property that was not reasonably safe. Construing all reasonable inferences in the light most favorable to plaintiff, we find that the trial court did not err in denying the City's motion to dismiss this action for failure to state a claim.

Next, the City contends that the trial court erred in denying its motion for a directed verdict or judgment notwithstanding the verdict. "Directed verdicts and judgments *n.o.v.* ought to be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 139-40.

The City contends that the Act immunizes it from liability to plaintiff based on the arguments it asserts above. The City further contends that plaintiff failed to prove the elements of a negligence action: duty, breach of duty, and proximate cause.

Having determined that plaintiff was an intended and permitted user of the City's property and that the immunities contained in sections 3—103 and 3—108 do not apply here, we find the City's first contention has no merit. We also find that the City owed plaintiff a duty to maintain the temporary international terminal in a reasonably safe condition. Having considered the evidence, as detailed above, in the light most favorable to plaintiff, we believe that there was sufficient evidence upon which the jury could reach its verdict. We therefore find that the trial court did not err in denying the City's motion for a directed verdict or judgment notwithstanding the verdict.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

We affirm.

JIGANTI, P.J., and LINN, J., concur.