GREGORY L. SISK, Plaintiff-Appellant, v. WILLIAMSON COUNTY, Defendant-Appellee.

Fifth District   No. 5—92—0546

Opinion filed April 13, 1994.

CHAPMAN, J., specially concurring.
LEWIS, P.J., dissenting.

Brad L. Badgley, of Heiligenstein & Badgley, P.C., of Belleville, for appellant.

Judge & James, Ltd., of Park Ridge (Jay S. Judge, Lawrence M. Brady, and Kristine A. Karlin, of counsel), for appellee.

JUSTICE MAAG delivered the opinion of the court:

Plaintiff, Gregory L. Sisk, brought this action against defendant, Williamson County, to recover for injuries suffered when he fell from a concrete bridge to a creek bed spanned by the bridge. Sisk alleged in his fourth amended complaint that on September 30, 1989, he was driving his automobile on the Williamson County/Franklin County line road. As he crossed a bridge on the roadway, he collided with the bridge for reasons not disclosed in the record. After the collision, he exited his vehicle to inspect the damage. Sisk claims that during the inspection, his view of the bridge, right of way, and roadway was obscured by weeds which had grown in and around the bridge. This condition allegedly prevented him from observing the edge of the bridge and caused him to fall. Williamson County, in its brief, characterized the location of the accident as a *"rural country road."* (Emphasis added.)

In response to these allegations, Williamson County filed a motion to dismiss pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992)). The county claimed that the complaint failed to allege sufficient facts to give rise to a duty of care owed to Sisk. According to the county, the facts as pleaded fail to demonstrate that Sisk was an intended and permitted user of the bridge, roadway, and right of way at the time of the fall. Stated simply, the county claimed that it had no duty to make the road, bridge, and right-of-way safe for foot travel.

The circuit court, after considering the complaint, motion, and authorities cited, granted the motion to dismiss, and this appeal ensued.

A motion to dismiss under section 2—615 admits all well-pleaded facts in the complaint for purposes of the motion. (*Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 603 N.E.2d 1215.) "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." Ill. Rev. Stat. 1991, ch. 110, par. 2—612(b) (now 735 ILCS 5/2—612 (West 1992)).

We do not believe that there is any question regarding the nature

of the claim that Sisk was attempting to plead. The sole issue before us is as follows: Accepting as true, for purposes of the motion to dismiss, all of the well-pleaded facts in the complaint, does the complaint allege facts which give rise to a duty owed by the county to Sisk? We answer the question in the affirmative.

The parties have briefed extensively the issue of whether a duty of care was owed by Williamson County to maintain the road, bridge, and right-of-way in a condition suitable for pedestrian use. Sisk claims such a duty exists, and the county denies that claim. At the heart of this dispute is section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a) (now 745 ILCS 10/3—102(a) *et seq.* (West 1992))). It provides:

"Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1991, ch. 85, par. 3—102(a) (now 745 ILCS 10/3—102(a) (West 1992)).

This statute has been the subject of numerous appellate and supreme court decisions, particularly in relation to streets and roads. The majority of these decisions focus on who is an "intended and permitted" user of a given street or road. Intended and permitted status is crucial since unless such status exists no duty of care arises. Rather than lengthen this decision with yet another discussion of these cases, we simply refer the parties to two recent opinions of our supreme court which extensively explain the principles at issue. See *Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 608 N.E.2d 882; *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.

Despite the guidance provided by *Curatola* and *Wojdyla*, other matters not discussed by those cases must also be considered. Section 11—1007 of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$^{1}/_{2}$, par. 11—1007 (now 625 ILCS 5/11—1007 (West 1992))) provides:

"(b) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.

(c) Where neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near as

practicable to an outside edge of a roadway, and, if on a two-way roadway, shall walk only on the left side of the roadway." Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, pars. 11—1007(b), (c) (now 625 ILCS 5/11—1007(b), (c) (West 1992)).

Clearly, the legislature was aware that pedestrians make use of the highways of this State. This is manifest due to the mere existence of the statute.

While bridges are not specifically mentioned, a "highway" is defined by the Illinois Highway Code (Ill. Rev. Stat. 1991, ch. 121, par. 1—101 *et seq.* (now 605 ILCS 5/1—101 *et seq.* (West 1992))) as:

> "any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years, or which has been or may be laid out and connect a subdivision or platted land with a public highway and which has been dedicated for the use of the owners of the land included in the subdivision or platted land where there has been an acceptance and use under such dedication by such owners, and which has not been vacated in pursuance of law. The term 'highway' includes *rights of way, bridges,* drainage structures, signs, guard rails, protective structures and all other structures and appurtenances necessary or convenient for vehicular traffic. A highway in a rural area may be called a 'road,' while a highway in a municipal area may be called a 'street'." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 121, par. 2—202 (now 605 ILCS 5/2—202 (West 1992)).

Reading together section 11—1007 of the Illinois Vehicle Code and section 2—202 of the Illinois Highway Code, there is no doubt that the legislature at least *foresaw* that pedestrians would use roads, bridges, and shoulders for travel. But foreseeability alone does not equal duty. Other factors must also be considered. The factors to consider when determining whether a duty of care is owed are: "(1) foreseeability that the defendant's conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon the defendant." *Curatola,* 154 Ill. 2d at 214, 608 N.E.2d at 888.

Pedestrians have been found to be intended and permitted users of a street or road under some circumstances: while in a designated bus loading zone (*Jorgensen v. Whiteside* (1992), 233 Ill. App. 3d 783, 599 N.E.2d 1009), while using the street to load, unload, enter, or exit a legally parked vehicle (*Di Domenico v. Village of Romeoville* (1988), 171 Ill. App. 3d 293, 525 N.E.2d 242), while using a crosswalk (*Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572), or while unloading a legally parked truck (*Curatola v. Village of Niles*

(1993), 154 Ill. 2d 201, 608 N.E.2d 882). Glaring by its absence from the briefs of the parties and the authorities cited in *Wojdyla* and *Curatola* is any case fitting the facts of this case. We are not concerned with a city street, an urban setting, or a controlled-access superhighway. We are dealing with what the defendant characterizes as a "rural country road."

It is common knowledge that country roads have no crosswalks, no parking lanes, and no designated pedestrian walkways or sidewalks. We are not discussing Michigan Avenue in Chicago. We are discussing the Williamson County/Franklin County line road.

As a practical matter it is impossible to cross a country road at a street corner or crosswalk. By its very nature, a country road is devoid of street corners and crosswalks. The closest thing to a street corner is an intersection with another country road, and this may be miles away. It would be ludicrous to expect a person to travel miles to an intersection to cross the road. Even if that were attempted, the pedestrian would have to walk on the road or shoulder to get there, because of the lack of sidewalks.

While it is the intent of the municipality which controls intended and permitted status, not the intent of the user (*Wojdyla*, 148 Ill. 2d at 425-26, 592 N.E.2d at 1102), we believe that a key factor in determining the intended use must be a recognition of the traditional and customary use.

It is not uncommon for a mailbox to be on the opposite side of the road from the residence it serves, and the homeowner must cross the road to collect his mail. On country roads people ride horses and bicycles; they jog, take walks to the neighbors, and drive combines and tractors; and yes, they drive cars too. This should come as no surprise.

Even in the age of the paved road and the automobile, pedestrians have always been intended and permitted users of country roads. Our supreme court has specifically recognized this inescapable fact. "As a matter of common knowledge, pedestrians upon highways running through the country *use, and have a right to use*, such highways, as well as the autoist, and both hold a mutual obligation, each to the other to observe their reciprocal rights." (Emphasis added.) (*Blumb v. Getz* (1937), 366 Ill. 273, 277, 8 N.E.2d 620, 622.) If this right recognized in *Blumb* has been abrogated, we have been unable to find the statute which did so.

In *Wojdyla* the court stated, "To determine the intended use of the property involved here, we need look no further than the property itself." (*Wojdyla*, 148 Ill. 2d at 426, 592 N.E.2d at 1102.) Looking at the property, we see a rural country road traditionally used by automobiles, farm equipment, and pedestrians.

Accordingly, we hold that pedestrians are intended and permitted users of country roads. This holding does not require a perfect surface for the pedestrian to use. The municipality is only required to exercise ordinary care to make the road (see Ill. Rev. Stat. 1991, ch. 121, par. 2—202 (now 605 ILCS 5/2—202 (West 1992))) reasonably safe for vehicular and pedestrian use. Whether this duty has been met or breached is a factual question to be resolved by considering the circumstances at and prior to the accident.

Justice Lewis states in his dissent, "There are no citations of authority by the plaintiff or the majority that indicate that counties and cities have a duty to maintain areas along the side of the streets or roads where the counties and cities have never maintained." (261 Ill. App. 3d at 60-61.) We respectfully point out that this assertion is the comment lacking support, not the majority opinion. Pedestrians are *required* to walk upon the shoulder under certain circumstances (Ill. Rev. Stat. 1991, ch. 95½, par. 11—1007 (now 625 ILCS 5/11—1007 (West 1992))), and the term "highway" includes rights-of-way and bridges (Ill. Rev. Stat. 1991, ch. 121, par. 2—202 (now 605 ILCS 5/2—202 (West 1992))). Our supreme court has specifically held that pedestrians *"use"* and *"have a right to use"* roads and highways (emphasis added) (*Blumb*, 366 Ill. at 277, 8 N.E.2d at 622), and this is a matter of common knowledge. These authorities compel the conclusion that pedestrians are intended and permitted users of country roads including bridges and the shoulder of the road.

It is important to clarify our holding in this case. The circuit court dismissed this case on the premise that *no* duty of care is owed to pedestrians using rural country roads. We hold today that a duty of ordinary care is owed. We are *not* holding that a duty exists to cut weeds on the shoulder of a country road or in a creek bed crossed by such a road. That is not to say that such a duty either exists or does not exist. Nor are we holding that it is or is not a breach of the duty of ordinary care to fail to cut weeds in or around a bridge or on the shoulder of a road. For us to make such a ruling would constitute a decision on an issue that is a mixed question of law and fact that was not squarely presented to us. Paragraph 8(a) of the fourth amended complaint claims the county was negligent in failing to "remove weeds which had grown *in* and *around* the concrete bridge structure." How tall were the weeds? What is meant by the allegation they had grown *in* and *around*? The resolution of these questions would aid greatly in determining whether the duty of ordinary care, which we have found is owed to pedestrians, includes the duty to cut the weeds.

We recognize that a section 2—615 motion is not the proper method for answering these questions. However, it is not our place to recommend the type of motion to file. We leave that to the parties.

Accordingly, the judgment entered by the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

JUSTICE CHAPMAN, specially concurring:
"Dear Friend:
I had not intended to discuss this controversial subject at this particular time. However, I want you to know that I do not shun a controversy. On the contrary, I will take a stand on any issue at any time, regardless of how fraught with controversy it may be. You have asked me how I feel about whiskey. Here is how I stand on the question.

If, when you say whiskey you mean the Devil's brew, the poison scourge, the bloody monster that defiles innocence, dethrones reason, destroys the home, creates misery and poverty *** takes the bread from the mouths of little children; if you mean the evil drink that topples the Christian man and woman from the pinnacles of righteous, gracious living into the bottomless pit of degradation and despair, shame and helplessness and hopelessness, then certainly I am against it with all of my power.

But, if, when you say whiskey, you mean the oil of conversation, the philosophic wine, the ale that is consumed when good fellows get together, that puts a song in their hearts and laughter on their lips and the warm glow of contentment in their eyes; if you mean Christmas cheer; if you mean the stimulating drink that puts the spring in the old gentleman's step on a frosty morning; if you mean the drink that enables a man to magnify his joy and his happiness and to forget, if only for a little while, life's great tragedies, and the heartbreaks and sorrows; if you mean that drink, the sale of which pours into our treasuries untold millions of dollars, which are used to provide tender care for our little crippled children, our blind, our deaf, our dumb, our pitiful aged and infirm, to build highways, hospitals, and schools, then certainly I am in favor of it." Author unknown, quoted in Respectfully Quoted, A Dictionary of Quotations 9 (Suzy Platt ed. 1992).

The unknown author of the letter on whiskey was drawn in two directions. I understand the feeling since I am drawn both ways in this case. I concur with Justice Maag because I agree that there is a duty owed to pedestrians on roadways; I could, however, agree with some of Justice Lewis' comments, but for the fact that his criticisms cover issues that were not addressed in the briefs on appeal or in the arguments before the trial court.

In addition, some of his comments would be better made to different audiences or they should be addressing a different complaint. On the first point, Justice Lewis asks, "The question still remains that if you are standing on the side of a bridge or a road, how or why would the presence of weeds obscuring the exact edge of the roadway or bridge make any difference?" (261 Ill. App. 3d at 57.) This is an excellent rhetorical question, but it would be more appropriately made to a jury.

On the second point, Justice Lewis states:

"Even if we assume for purposes of argument that a pedestrian is a permitted and intended user of county roads and bridges for any and all purposes imaginable, the fact that the circuit court stated that it was basing its decision on a pedestrian not being an intended and permitted user of the road and bridge should not prevent this court from considering the fact that the defendant has no duty to maintain the areas adjacent to roads and bridges safe for pedestrians leaving the road or bridge." (261 Ill. App. 3d at 58.)

The problem with his statement is that the question presented to and decided by the trial court was whether the plaintiff was an intended and permitted user of the road and bridge. That question was also the one briefed and argued before this court.

While I enjoy Justice Lewis' allusions to Longfellow and Shakespeare, I am hopeful that his concern for the plight of snake-bitten plaintiffs may be assuaged by the application of a medicinal amount of "the Devil's brew."

I concur with the conclusion of Justice Maag.

PRESIDING JUSTICE LEWIS, dissenting:

"Don't cross the bridge till you come to it, Is a proverb old, and of excellent wit." Longfellow, "The School of Salerno," in The Golden Legend, VI.

We really do not have to "cross the bridge" as to whether pedestrians are intended and permitted users of county roads and bridges. This is not a case of a pedestrian using a county road or bridge in the traditional and customary manner.

I realize that "[t]he parties have briefed extensively the issue of whether a duty of care was owed by Williamson County to maintain the road, bridge, and right-of-way in a condition suitable for pedestrian use." (261 Ill. App. 3d at 51.) However, the plaintiff was not a pedestrian using the road or walking across the bridge. As I understand the plaintiff's complaint, the plaintiff ran his car into the side of the bridge (the parties use the description "concrete culvert"

several times in their memoranda to the trial court) at night, climbed or stepped up onto the side of the bridge, and then for some unexplained and unalleged reason stepped off into space. Plaintiff alleges that the defendant "[f]ailed to properly maintain the right-of-way of the roadway and the aforesaid concrete bridge by failing to cut, mow or otherwise remove the weeds which had grown in and around the concrete bridge structure." (The weed theory germinated in the third amended complaint and fully sprouted in the fourth amended complaint as the root cause of plaintiff's injuries.) Plaintiff further alleged that "the aforesaid weeds which had grown in and around the aforesaid concrete bridge structure and the right-of-way of the roadway[ ]visually obscured the edge of the aforesaid right-of-way, right-of-way associated therewith and the creekbed below." In other words, the plaintiff claims that the county had the duty to mow the weeds so that the plaintiff could see the edge of the bridge or roadway and, if the county had done so, he would not have fallen off the bridge.

I will not even discuss the ability of a person to see weeds at night on a county road or bridge. Since the plaintiff alleged that the weeds obscured his vision of the edge of the bridge and the roadway, I will assume such to be true. The question still remains that if you are standing on the side of a bridge or a road, how or why would the presence of weeds obscuring the exact edge of the roadway or bridge make any difference? The presence of weeds should denote the edge of the road or bridge and should serve as a warning to the pedestrian not to go farther, if the pedestrian wishes to stay on the road or bridge. Whether the weeds extended over onto the concrete one inch or three feet is irrelevant. You do not step on or past the weeds, if you want to be safe. The fourth amended complaint really does not even state how the weeds contributed to or were the proximate cause of plaintiff's injuries.

What has caused the argument among this panel of justices was the red flag raised by the statement of the trial judge that the plaintiff failed "to allege facts which show that plaintiff, at the time of the occurrence in the complaint, was an intended and permitted user of the road and bridge." The circuit court, however, in dismissing the fourth amended complaint on the grounds of no duty being owed by the county to a pedestrian using the road or bridge, also stated, "Based upon the facts alleged in the Fourth Amended Complaint, the three previous complaints, herein, and the cases referred to, herein, the Court finds that no set of facts can be alleged which would give rise to a duty on this defendant to this plaintiff for the occurrence alleged herein and thus the Fourth Amended Complaint should be dismissed with prejudice."

Even if we assume for purposes of argument that a pedestrian is a permitted and intended user of county roads and bridges for any and all purposes imaginable, the fact that the circuit court stated that it was basing its decision on a pedestrian not being an intended and permitted user of the road and bridge should not prevent this court from considering the fact that the defendant has no duty to maintain the areas adjacent to roads and bridges safe for pedestrians leaving the road or bridge. In *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 478 N.E.2d 384, our supreme court held that a reviewing court can consider an issue not raised in the circuit court if the record contains all the factual material that is necessary to decide the issue. Further, it appears in *Thompson v. Cook County Forest Preserve District* (1992), 231 Ill. App. 3d 88, 595 N.E.2d 1254, that a statutory duty to support an allegation of a common law duty was raised by the plaintiff for the first time on appeal and decided by the appellate court.

In the case at bar, the only breach of duty that plaintiff alleges is that the county "negligently failed to properly maintain its property *** by failing to cut, mow or otherwise remove weeds which had grown in and around the concrete bridge structure." The circuit court found that no duty existed, which means that the circuit court did not believe that there was a duty on the county to mow the weeds in or about the bridge. We should give the trial judge some credit for having some sense. He was not holding that the county would never have a duty to a pedestrian using the county road; rather, he clearly stated that based upon the three prior complaints and this amended complaint there is no duty on the county to the plaintiff for the occurrence alleged herein. To paraphrase *Hamlet*, "To mow or not to mow, that is the question." We need to answer that question just as the circuit court did.

Justice Chapman states in his specially concurring opinion that some of my criticisms set forth in this dissent "cover issues that were not addressed in the briefs on appeal or in the arguments before the trial court." (261 Ill. App. 3d at 55.) I agree that the issue of weeds not being the proximate cause of plaintiff's injuries was not covered by the briefs, but I only raised such to be considered in relation to the alleged duty upon the county to mow the weeds. As to the parties not arguing the duty to mow the weeds, someone must have spiked my coffee with Justice Chapman's "Devil's brew." I thought that the appellee's (the county's) brief sets forth the second issue on appeal as:

"II. DEFENDANT OWES NO DUTY TO PEDESTRIANS, SUCH AS PLAINTIFF, TO CUT, MOW, OR REMOVE WEEDS IN AND AROUND A CONCRETE BRIDGE STRUCTURE."

The county then spends from page 35 to page 38 arguing and discussing cases that the county has no duty to a motorist or pedestrian to trim or remove weeds or brush from a concrete bridge. Plaintiff filed no reply brief and made no motion to strike this issue from the county's brief. So if the county failed to raise the specific issue before the circuit court, it still raised such issue before this court without objection by the plaintiff. As I have previously stated, the only duty raised in the fourth amended complaint is the duty to mow, and the trial judge said that there was no duty owed by defendant to the plaintiff. I agree with Justice Chapman that my "concern for the plight of snake-bitten plaintiffs" would be "assuaged by the application of a medicinal amount of 'the Devil's brew' " (261 Ill. App. 3d at 56), and if I drank enough quantities of his brew, I might also be able to find a duty where there is no duty. No doubt a medicinal amount of the "Devil's brew" would assuage my frustration in failing to convince my colleagues to answer the sole issue before us, which was raised by the county's brief, to mow or not to mow.

Turning now to the duty of the county to the plaintiff, we must not confuse what the technical phrase "intended and permitted user" means. In *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098, our supreme court pointed out that the intent of the individual is not controlling when we measure the duty of care that a governmental unit may have. Just because it may be necessary or foreseeable that a person may walk along a road or across a bridge does not mean that the person is automatically a permitted and intended user of the road or bridge. (*Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 608 N.E.2d 882.) Rather, we look at the property itself to see what the intended use is. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.) Surely, the intended use of the bridge was not to provide a structure for someone to climb on at night. Nor was the air space next to the bridge intended to support the human body. Nor were the weeds in and about the bridge, even if mowed, intended to signify a safe place to walk. Nor can it be said, as the majority found to be a criterion to establish duty, that the traditional and customary uses of the bridge consisted of providing people a place to climb on at night.

The majority in this case is the same majority in the recent case of *Vaughn v. City of West Frankfort* (1994), 258 Ill. App. 3d 424, that went to great lengths to distinguish between pedestrian-vehicle cases and pedestrian-defect cases. It is interesting to note that the majority in its discussion of the law in *Vaughn* does not claim that the city had a duty to protect pedestrians from all hazards or risks that they might encounter in using the streets. In the case at bar, however, we

are left with the vague holding and assertion that "the complaint allege[s] facts which give rise to a duty owed by the county to Sisk." The complaint alleges only that there was a duty to mow, but the majority then states, "We are *not* holding that a, duty exists to cut weeds on the shoulder of a country road or in a creek bed crossed by such a road." (Emphasis in original.) (261 Ill. App. 3d at 54.) What then is the duty of the county to the plaintiff and how did the county breach this unspecified duty? "To mow or not to mow, that is the question?"

In Justice Chapman's dissent in *Gabriel v. City of Edwardsville* (1992), 237 Ill. App. 3d 649, 662, 604 N.E.2d 565, 573-74, which Justice Chapman quotes in his authoring of the majority opinion in *Vaughn*, he asks a rhetorical question: "Would anyone argue, however, that a city would not have a duty to barricade, fence, pave over, or otherwise do something about a 10-foot-wide pit filled with crocodiles, whether that pit was in a sidewalk, on the parkway beside the sidewalk, or in the middle of the street?" Maybe not. Why? Because there is a duty on the city to maintain its sidewalks and parkways (the area between the sidewalk and the street) for the use by pedestrians and a duty not to permit this property to deteriorate or become a trap for intended and permitted users. The use of the street by a pedestrian presents a more difficult question, as there may be no duty, for instance, on the City of Chicago to prevent pedestrians from falling into crocodile pits located in the center of the Dan Ryan Expressway. See *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.

Does the city or county, however, have a duty to barricade, fence, pave over, or otherwise do something about a swamp or drainage ditches full of cottonmouths, copperheads, and rattlesnakes adjacent to the road? In fact, in my home County of Union, in an area called "the bottoms," the State closes a road each spring and fall to vehicular traffic so that the snakes can migrate safely to and from the bluffs to the swamp. Should the State or county pave, barricade, fence, or otherwise do something to protect a pedestrian who wants to leave a road or to climb around on a bridge, not only in "the bottoms" but, also, in the rest of the county, from the foreseeable and known hazard of being snake-bitten?

*Bainter v. Chalmers Township* (1990), 198 Ill, App. 3d 540, 555 N.E.2d 1195, *Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 530 N.E.2d 284, and *McLaughlin v. Alton R.R.* (1935), 278 Ill. App. 551, all were cited by the county in its brief, and they stand for the authority that the county or adjacent property owners to a highway have no duty to persons using the road to keep the adjacent land free of weeds. There are no citations of authority by the plaintiff or the

majority that indicate that counties and cities have a duty to maintain areas along the side of the streets or roads where the counties and cities have never maintained. If there is no duty to mow the weeds adjacent to the road to drivers of vehicles, how can we say that there is a duty to mow the weeds to pedestrians using the road and, especially, to those wishing to leave the road or bridge?

In *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 582 N.E.2d 108, also cited by the county in its brief, our supreme court held:

> "Whether a duty exists is a question of law to be determined by the court, and depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. [Citation.] In considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant. [Citations.] In terms of foreseeability, the court will consider whether the risk of harm to the plaintiff was *reasonably foreseeable.*" (Emphasis in original.) (*Gouge,* 144 Ill. 2d at 542, 582 N.E.2d at 112.)

In *Gouge,* the supreme court upheld the dismissal of a complaint pursuant to section 2—615 of the Code of Civil Procedure, even though it was wrongfully filed as a section 2—619 motion to dismiss. (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619.) The court held in part that the defendant owed no duty to plaintiff, because it was not reasonably foreseeable that a motorist would leave the road and strike a particular telephone pole that was located 15 feet off the highway. If a vehicle hitting a particular pole next to a highway is not reasonably foreseeable, then a pedestrian walking off the side of a particular rural bridge surely is just as reasonably unforeseeable.

For thousands of years people have walked on roads and crossed bridges without any duty being imposed upon the government to mow the weeds next to roads or bridges. The very reason that we have roads and bridges is for the safety and convenience of the users. If you want to be safe, you stay on the road or the bridge.

Can one even begin to imagine the difficulty and cost of mowing the weeds around all of the rural bridges that are located on county roads leading into the Shawnee National Forest? I would not be surprised to learn that there may be more bridges in Pope County than there are people. How will any governmental unit be able to keep the grass or weeds next to a road at a level of a normal front lawn, so that a pedestrian will not step into a hole or get bitten by a

snake? In this day and age of environmental concerns, a governmental unit is not going to spray weed killer around a creek, so I suppose county and city employees will have to visit every bridge every week during most of the year to cut the weeds in order to ensure that people do not fall off bridges. "[G]reat weeds do grow apace." William Shakespeare, Richard III Act II, sc. IV, l. 13.

I feel sorry for the plaintiff, but we have to face reality. The plaintiff would have fallen off the bridge even if the county had manicured the weeds. We are flirting with imposing a tremendous burden on the counties and cities because of one freak accident. The courts are not inundated with cases of persons accidentally falling or deliberately jumping off bridges, so why are we even thinking about imposing this horrendous duty on the counties due to the negligence of one person?

We are rapidly reaching the point in the law whereby an injured party cannot be held accountable or responsible for his or her own safety. The mere fact that a plaintiff was injured means that someone else must be found to pay the bill. In this case, the county was not accused of improperly maintaining the road or bridge where the plaintiff should have been. Rather the county is accused of not maintaining an area where the plaintiff knew he should not have been, so let us hold the county liable.

The argument is made that we should let the jury decide this matter, as it will find no liability. This argument ignores the inevitable, that the court will have to decide the question of duty and instruct the jury before the jury considers the case. If the jury is instructed that there is a duty to mow the weeds or if a general instruction is given to the effect that the county has a duty to exercise ordinary care not to injure the plaintiff, then the jury may return one of those crazy Reader's Digest verdicts.

Since duty is a question of law, we should decide the duty of the county now. Lawsuits cost time, money, and anguish. We cannot afford to devote limited resources and budgets to those cases that should be dismissed on their face, nor should we engender disrespect for the law and our courts by entertaining meritless suits. We are not doing the plaintiff a favor by prolonging his expectations, unless we are prepared to say that the county had a duty to mow the weeds in or about the bridge. Nobody benefits by sending this case back to the circuit court to answer more questions about the weeds. The weeds had nothing at all to do with this accident.

Accordingly, I would affirm the trial court.