**D'LAST CORPORATION, Plaintiff,**

v.

**Avery A. UGENT; the Bradley Adam Corporation; American International Immigration Agency, Inc.; Pan American Photographic Supply Corporation; Avalug–Concordia Corporation; AIIP, Inc.[1]; and US Passport Photo Service, Inc., Defendants.**

**No. 94 C 1035.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 19, 1994.

---

1. This is the corporate name listed in the caption of the Complaint. As the text reflects, the actual name is AIPP, Inc.

Rodues F. Reeves, Chicago, IL, for plaintiff.

Robert A. Filpi, Stack, Filpi & Kakacek, Chtd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

D'Last Corporation ("D'Last") has filed a seven-count Complaint against a number of defendants, asserting claims grounded in the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I), the Sherman Act (Count II), the Illinois Consumer Fraud and Deceptive Practices Act (Count III), tor-

tious interference with contracts and prospective contracts (Count IV), trade slander and libel (Count V), piercing the corporate veil (Count VI) and conspiracy (Count VII). As to all but the first two counts · D'Last invokes the supplemental jurisdiction concept of 28 U.S.C. § 1367(a).

All of the corporate defendants have moved for dismissal pursuant to Fed.R.Civ.P. ("Rule") 9(b), 12(b)(1) and 12(b)(6), and the fully-briefed motions have been transferred from the calendar of this Court's colleague Honorable James Alesia to this Court for disposition. For the reasons stated in this memorandum opinion and order, the motions to dismiss are granted and this action is dismissed.[2]

### D'Last's Allegations

█ Familiar Rule 12(b)(6) principles require the district court to accept as true all of plaintiff's well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor (*Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992)). No motion to dismiss should be granted unless the court concludes that no relief could be granted under any set of facts that could be proved consistent with those well-pleaded allegations (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

D'Last's grievances stem from a group of assertedly anticompetitive activities intended to harm its business of supplying photograph and fingerprint services used primarily for immigration purposes. D'Last and defendants The Bradley Adam Corporation ("Bradley Adam"), American International Immigration Agency, Inc. d/b/a Private Immigration Agency ("American International") and Pan American Photographic Supply Corporation ("Pan American") operate studios engaged in that business in Chicago. Defendants Avalug–Concordia Corporation ("Avalug") and AIPP, Inc. ("AIPP") operate similar businesses in Houston, Texas, and defendant US Passport Photo Service, Inc. ("US Passport") carries on a like business in Miami, Florida. Defendant Avery Ugent ("Ugent"), a Florida resident, is president and sole or controlling shareholder of each of the corporate defendants (all Florida corporations).

D'Last alleges that from August 1991 through November 1992 employees of Ugent[3] and of Bradley Adam undertook a campaign under Ugent's direction for the purpose of either forcing D'Last out of business or compelling D'Last to sell its business to Ugent at a minimal price (Complaint ¶ 21). Among the acts ascribed to those employees were stationing "large and threatening" individuals in front of D'Last's studio to prevent and dissuade customers from entering; stealing a canopy and sign from D'Last's entrance; committing batteries on D'Last's employees and on one of its customers; threatening to commit additional batteries; making a series of false or disparaging statements to potential D'Last customers; filing false criminal complaints against D'Last's employees; harassing D'Last's employees; staging fights with D'Last's employees in front of its entrance; paying D'Last's employees to stay home or "slack off" at work; soliciting "intelligence" from D'Last's employees by cash offers; physically turning away D'Last's customers; paying INS workers to direct immigrants to Bradley Adam or American International and to steal fingerprint forms; suborning perjury in a state court action brought to restrain the obstruction of

---

**2.** Unfortunately both sides' presentations on the current motions have been extraordinarily shallow, in terms of both the analysis and the authorities cited. Although defendants do prevail, that result cannot really be credited to what their counsel has presented as grist for this Court's mill—virtually all of the controlling authorities cited in this opinion were not mentioned in defendants' memoranda at all (or were advanced in an inaccurate way). And on D'Last's RICO claim, the analysis owes nothing to either side's submissions.

**3.** This is a confusing characterization in light of what D'Last has alleged as to the parties. Ugent is *not* identified in the Complaint as carrying out any activities in his own name—on the contrary, Count VI seeks to impose personal liability on him on the theory that the several defendant corporations are sham entities (the veil-piercing concept). Thus the Complaint's reference to Ugent's "employees" appears to manifest the imprecision of thought or analysis that marks a material part of that pleading.

D'Last's customers and employees; obstructing D'Last's entrance; and trespassing on D'Last's premises. D'Last also asserts on information and belief that the same employees repeatedly attempted to solicit hit men to kill D'Last's president and perhaps others of its employees.

D'Last ties the other defendants into the complained-of activity by alleging in general terms that each of them participated to some degree in the charged acts. Ugent is said to have directed the acts by telephone and by traveling from his home in Florida to Chicago (Complaint ¶ 22). Bradley Adam allegedly paid the unnamed individuals who actually performed the acts (Complaint ¶ 23). American International assertedly participated in the management of those same employees and "knowingly accepted the benefit" of those acts (Complaint ¶ 24). Pan American purportedly "conspired" with Bradley Adam, American International and Ugent to refer customers to Bradley Adam (Complaint ¶ 25). Avalug, AIPP and US Passport—though none is located or does business in Chicago— allegedly paid part of the salary of Eugene Dickerson ("Dickerson"), Ugent's national manager who was transferred to Chicago to manage the activities of Bradley Adam and to carry out the pattern of oppressive activity (Complaint ¶¶ 20, 26).

D'Last's RICO claim also alleges other activity on defendants' part in order to satisfy the "racketeering activity" component of that claim (see 18 U.S.C. §§ 1961(1) and (5)[4]). Any discussion of those added allegations will be deferred to the section of this opinion dealing with the RICO claim.

### D'Last's Claims

As already indicated, D'Last advances a veritable host of legal theories. Because this opinion finds both federally-based claims insufficient, it also dismisses all of the state-law claims on a nonsubstantive basis under the teaching of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). What follows therefore focuses primarily (though not exclusively) on the RICO and Sherman Act claims.

### I. *RICO*

■ D'Last seeks to bring Section 1962(c) into play to establish its RICO cause of action. As with every such RICO claim, D'Last must sufficiently allege defendants' "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" (*Vicom, Inc. v. Harbridge Merchant Serv.,* 20 F.3d 771, 778 (7th Cir.1994), quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). Movants (who it will be remembered are all the corporate defendants—all of the defendants save Ugent himself[5]) contend that D'Last's RICO claim fails (1) because D'Last has named precisely the same entities as the defendant RICO "persons" and as the RICO "enterprise" and (2) because D'Last has failed to show a pattern of racketeering activity. Those contentions will be examined in turn.[6]

### A. *Enterprise*

Complaint ¶ 29 says that during the relevant time frame "Ugent, Bradley Adam, Avalug, AIPP, and US Passport were jointly engaged in an enterprise," which D'Last dubs as "Ugent Enterprises."[7] Although some confusion is created by the poor drafting of the Complaint,[8] the required reason-

---

**4.** Further citations to RICO will take the form "Section—," referring to Title 18's numbering.

**5.** It seems that as of the time of the parties' briefing Ugent had not yet been served with process.

**6.** Many of the problems with the RICO claim stem from the disorganized, somewhat jumbled and cursory nature of the predicate act allegations.

**7.** American International and Pan American are thus omitted from the "Ugent Enterprises" grouping.

**8.** For example, Complaint ¶ 28 also speaks of each defendant (*including* American International and Pan American) as an "enterprise" as well as a "person" defined in Section 1961(4). Then P.Mem. 2 (blithely ignoring how counsel has drafted the Complaint) says that the "enterprise" is an association (identified as Ugent Enterprises) consisting of all seven corporate defendants and Ugent. For now, to view the Complaint in the light most favorable to D'Last, this opinion will

able inferences call for Ugent Enterprises (as so defined) to be viewed as the "enterprise" whose affairs were conducted by the defendant "persons" through a "pattern of racketeering activity."

Defendants point to *Haroco v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd per curiam on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), as establishing that a liable "person" in RICO action must be distinct from the defined "enterprise." But that proposition, as to which *Haroco* chose to follow the analysis of Section 1962(c) set out by this Court in *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 23–24 (N.D.Ill. 1982), does not carry the precise consequence that defendants seek to ascribe to it here.

■ Where defendants' assertion fails in that respect is in their unwillingness to recognize the concept that an "association in fact" (which is a permissible "enterprise" under Section 1961(4)), such as Ugent Enterprises is alleged to be here, *is* viewed as sufficiently separable from the individual members of that association so as to allow those members to be sued as RICO-violating "persons." Although that issue has not yet been ruled upon by our Court of Appeals, "the vast majority of courts agree that an association in fact enterprise is distinct from each of its members for purposes of the person/enterprise distinction requirement" (2 Arthur Matthews, Andrew Weissman & John Sturc, *Civil Rico Litigation* ["*Civil Rico Litigation* "] § 6.03[A], at 6–40 & n. 88 and numerous cases cited there (2d ed. 1992); accord, *River City Markets, Inc. v. Fleming Foods West, Inc.,* 960 F.2d 1458, 1462 (9th Cir.1992)).

■ But having said that, this Court finds that defendants prevail nonetheless—not quite despite themselves, but for a reason materially different from the simplistic one that they attempt to elicit from *Haroco.* D'Last's problem is that the combination of defendants that it lumps together as Ugent Enterprises does not qualify as an "associa-

tion in fact" in the RICO sense. What RICO requires of such a grouping was aptly described by our Court of Appeals in *United States v. Neapolitan,* 791 F.2d 489, 500 (7th Cir.1986), quoting *United States v. Anderson,* 626 F.2d 1358, 1372 (8th Cir.1980):

> While the hallmark of conspiracy is agreement, the central element of an enterprise is structure. An enterprise must be more than a group of people who get together to commit a "pattern of racketeering activity."
>
> We hold that Congress intended the phrase "a group of individual's [sic] associated in fact although not a legal entity," as used in its definition of the term "enterprise" in section 1961(4), to encompass only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined a part [sic] from the commission of the predicate acts constituting the "pattern of racketeering activity."

That concept has been adhered to in such cases as *Jennings v. Emry,* 910 F.2d 1434, 1440–41 (7th Cir.1990) and *Hartz v. Friedman,* 919 F.2d 469, 471 (7th Cir.1990)—and it has not been attenuated, in the context posited by D'Last, by the later dictum in *Burdett v. Miller,* 957 F.2d 1375, 1379–80 (7th Cir. 1992). See also 1 *Civil Rico Litigation* ¶ 5.04, and particularly ¶ 5.04[B][3] at 5–40 to 5–44 and cases cited there.

■ Here D'Last's own allegations negate an association in fact in the statutory sense—instead its grievance is that the very purpose for which Ugent Enterprises existed was to eliminate D'Last and other competitors in the passport photograph and fingerprint business through unlawful means—that is, through the complained-of pattern of racketeering activity. According to D'Last, each of the individual corporations was engaged in the business of providing photography and fingerprint services to its customers (a perfectly legitimate activity by itself). But the only identified goal for which defendants

assume that the alleged RICO enterprise is an association of virtually all, if not all, of the defen-

dants.

joined forces was the nefarious one of carrying on racketeering activity—that was *the* raison d'etre of the "association" as defined by D'Last itself.[9]

And so it is that D'Last has pleaded itself out of court on its attempted RICO claim. It has sought to sue RICO "persons" who have not conducted a separate RICO "enterprise" through a pattern of racketeering activity—at least not in the sense that has been prescribed by *Haroco* and like decisions. Count I is dismissed.

### B. *Pattern of Racketeering*

That just-stated conclusion makes it unnecessary to parse the Complaint to see whether D'Last has sufficiently alleged a pattern of racketeering activity. Despite the guidance provided by the ultimate authority in *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237-43, 109 S.Ct. 2893, 2899-2903, 106 L.Ed.2d 195 (1989), the contours of such a pattern remain difficult to mark out with any precision. Suffice it to say that this Court's review of the Complaint has disclosed it to be problematic in a number of respects—but again those need not be rehearsed in light of Count I's already-identified deficiency.

### II. *ANTITRUST VIOLATIONS*

D'Last claims in Count II that the same actions that formed the gravamen of its unsuccessful RICO claim also constituted a conspiracy in restraint of trade and a conspiracy to monopolize trade in violation of Sherman Act ("Act") §§ 1 and 2, 15 U.S.C. §§ 1 and 2. Defendants move to dismiss that count on the grounds (1) that there can be no actionable antitrust conspiracy because of the close affiliation among the purported conspirators and (2) that D'Last has failed to allege a sufficient nexus with interstate commerce.[10] Because the first of those reasons compels the dismissal of Count II, once again there is no need to examine defendants' second contention.

### A. *Intra-enterprise Conspiracy*

■ Act § 1 prohibits "unreasonable restraints of trade effected by 'contract, combination, or ... conspiracy' between *separate* entities" (*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984) (emphasis in original)). *Copperweld, id.* at 776-77, 104 S.Ct. at 2744-45 held that a parent corporation and its wholly-owned subsidiaries are legally incapable of conspiring with each other in the sense proscribed by Act § 1. While the Court specifically limited its holding to the parent-subsidiary relationship (*id.* at 767, 104 S.Ct. at 2739-40), its rationale—essentially that a conspiracy with oneself is conceptually impossible, like the sound of one hand clapping—compels the same result here.

■ *Copperweld, id.* at 771-72, 104 S.Ct. at 2741-42 recommended that courts, in determining whether a conspiracy may exist among related defendants, should consider whether affiliated corporate entities have a complete unity of interest, rather than focusing on mere corporate form. It held that the Act ·does not reach conduct that is "wholly unilateral" in that sense (*id.* at 768, 104 S.Ct. at 2740).

---

9. It is no accident that D'Last's Count II incorporates the selfsame substantive allegations, and no more, as the predicate for charging a conspiracy in violation of the antitrust laws. To be sure, the illegality of purpose of a combination—a conspiracy—does not as such disqualify the combination for association-in-fact status under RICO. But where that illegality indeed consists of carrying on a pattern of racketeering activity, such disqualification follows under the teaching of *Neapolitan* and the other cases cited here—for there was no independent "structure," no "enterprise ... distinct, separate, and apart from a pattern of racketeering activity" (*Jennings*, 910 F.2d at 1440).

10. There are other critical flaws in D'Last's antitrust count. For one thing, it fails to allege injury to competition rather than merely to competitors (see, e.g., *Car Carriers v. Ford Motor Corp.*, 745 F.2d 1101, 1107 (7th Cir.1984); *Vakharia v. Swedish Covenant Hosp.*, 824 F.Supp. 769, 779 (N.D.Ill.1993)). For another, D'Last includes no adequate allegations of a specific intent to monopolize—an essential element of Section 2 conspiracies (*Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1576 (11th Cir. 1991); *Appraisers Coalition v. Appraisal Inst.*, 845 F.Supp. 592, 603 (N.D.Ill.1994)).

Here D'Last makes numerous allegations that defendants are unified, including these:

Avery A. Ugent ... is sole or controlling shareholder of each of the corporate Defendants. (Complaint ¶ 6)

Defendants Ugent, Bradley Adam, Avalug, AIPP, and US Passport were jointly engaged in an enterprise[.] (Complaint ¶ 29)

At all times mentioned ... Ugent failed to operate the Defendant corporations as legal entities separate from himself and each other[.] (Complaint ¶ 55)

[T]he several Defendants acted as agents and principals of each other[.] (Complaint ¶ 59)

Such allegations connote a complete unity of interest. This Court finds that the reasoning of *Copperweld* applies and that no conspiracy under the Sherman Act may exist under the circumstances alleged by D'Last.

■ To date our Court of Appeals has not directly addressed the question whether multiple defendants under the same ownership and control may "conspire" within the meaning of the Act.[11] Courts elsewhere, however, have regularly held that the *Copperweld* rationale applies to such situations (see, e.g., *Guzowski v. Hartman,* 969 F.2d 211, 214 (6th Cir.1992); *Advanced Health–Care Serv., Inc. v. Radford Community Hosp.,* 910 F.2d 139, 146–47 (4th Cir.1990) and cases cited there; *H.R.M., Inc. v. Tele–Communications, Inc.,* 653 F.Supp. 645, 647–48 (D.Colo.1987)). Professor Areeda agrees (VII Philip Areeda, *Antitrust Law* § 1464f (1986)).

■ This opinion's ruling applies to D'Last's conspiracy claims under both Act §§ 1 and 2. Indeed, Act § 1 and the conspiracy-to-monopolize provision of Section 2 "require the same threshold showing: the existence of an agreement to restrain trade" (*Seagood Trading,* 924 F.2d at 1576; see

*Appraisers Coalition,* 845 F.Supp. at 603). Claims under the two sections differ primarily in that Act § 2 has the added requirement of specific intent to monopolize—they do not differ as to the nature of the conspiracy (see *Seagood Trading,* 924 F.2d at 1576).

### B. *Interstate Commerce*

As just stated, D'Last has also pleaded itself out of court on its Count II for lack of an actionable conspiracy. Hence this opinion need not address defendants' argument that D'Last has failed to plead a sufficient effect on interstate commerce. This Court's silence on the issue should create no inference in either direction.

### III. *State Law Claims*

■ With both federal-question claims thus having gone by the boards, nothing remains as a jurisdictional anchor to which D'Last's several state-law claims can moor themselves. Section 1367 speaks of "supplemental jurisdiction," and the essential primary jurisdiction is nonexistent. *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251–52 (7th Cir.1994) is one of several recent decisions reconfirming that where such a determination has been made at the very threshold of a case in the circumstances posed here, the rule of *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 compels dismissal. Accordingly Counts III through VII are dismissed without prejudice to their reassertion in a court of competent jurisdiction.[12]

### Conclusion

Defendants' motions to dismiss are granted in their entirety. Although Ugent has not joined in the motions, the flaws identified in this opinion are claim-oriented rather than

---

11. *Fishman v. Wirtz,* 807 F.2d 520, 542 n. 19 (7th Cir.1986) declined to extend the *Copperweld* rationale to a situation having "some overlap" of ownership and control, finding such an extension not warranted under the facts of that case. By contrast, this case involves a *total* overlap—a total unity of interest—among defendants, the same relationship that has led courts in other Circuits to apply the *Copperweld* rationale to find that no antitrust conspiracy may exist in those terms.

12. This Court has examined all of those counts in detail and has found each of them wanting in different ways. But because anything said in those respects would be not only dictum but also in the nature of an advisory opinion prohibited by Article III, once again silence is the proper course to pursue.

party-specific and doom both federal claims in their entirety. And because those flaws are substantive rather than mere defects in pleading,[13] not only the Complaint but this action itself are dismissed. Such dismissal is with prejudice as to Counts I and II and without prejudice as to Counts III through VII.

---

13. Nor has D'Last's counsel suggested any prospect of a jurisdictionally curative amendment in its memorandum in opposition to defendants' motions.