**Dottie WOODARD, and Richard Wright, Plaintiffs,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Corporation, American Family Insurance Group, a Wisconsin Corporation, William Soyk, individually and in his representative capacity as an employee and agent of American Family Mutual Insurance Company, a Wisconsin Corporation, Southeastern Research Laboratories Inc., a South Carolina Corporation, and Richard W. Henderson, individually and in his representative capacity as President of Southeastern Research Laboratories, Inc., Defendants.**

No. 96 C 50200.

United States District Court,
N.D. Illinois,
Western Division.

Jan. 31, 1997.

---

Mark A. Byrd, Christopher J. Taylor, Byrd & Taylor, Rockford, IL, for Plaintiffs.

Ricky L. Hammond, Chuhak & Tecson, Chicago, IL, Debra B. Walker, John M. Hynes, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiffs, Dottie Woodard and Richard Wright, filed a seven-count complaint alleging various state law claims against defendants, American Family Mutual Insurance Company, American Family Insurance Group, William Soyk, Southeastern Research Laboratories, Inc., and Richard W. Henderson. This court has jurisdiction pursuant to 28 U.S.C. § 1332, and venue is proper as a substantial part of the alleged events giving rise to this action occurred in this district and division. Pending before the court are separate motions to dismiss by defendants. These motions have been consolidated for purposes of this opinion and will be resolved herein.

### BACKGROUND

The facts are taken from the complaint and are assumed to be true for purposes of the pending motions. American Family Mutual Insurance Company and American Family Insurance Group (hereinafter collectively referred to as "American Family") are Wisconsin corporations engaged in providing liability insurance throughout the United States, including Illinois. Soyk is a Wisconsin resident and is employed as a special investigator by American Family. Southeastern Research Laboratories, Inc. ("Southeastern") is a South Carolina corporation engaged in the business of chemical and other types of scientific testing. Henderson is a South Carolina resident and is president and chief executive officer of Southeastern. Plaintiffs Woodard and Wright, both Illinois residents, lived in a mobile home owned by Woodard in New Milford, Illinois.

On January 8, 1994, a fire occurred in the mobile home destroying the home and the personal belongings contained therein. At that time, Woodard held an insurance policy with American Family. Woodard filed a claim with American Family on January 27, 1994, seeking the maximum limits on her policy for the loss of her mobile home and personal property, that limit being $10,000 for the building and $10,000 for the personal property. The Illinois State Fire Marshall and local police agencies investigated the fire. American Family also conducted its own investigation. During these investigations, samples of wood, carpet and cloth were taken from the mobile home to be tested for the presence of accelerants. The fire marshall's samples were sent to the Illinois State Police crime lab, where analysis thereon revealed no presence of accelerants. American Family's samples, taken from the same locations, were sent to Southeastern for testing. It is alleged that defendants all conspired with each other to obtain false test results in order to provide American Family with a basis for denying Woodard's insurance claim.

Southeastern tested four samples and claimed that the results on two of the four samples revealed the presence of accelerants. It is alleged that all defendants, with knowledge of their falsity, provided these test results to the Winnebago County State's Attorney's office. It is also alleged that American Family, having knowledge that the fire was caused by accidental means, wrongfully denied Woodard's claim on April 27, 1994, on the basis that the fire was deliberately set by either Woodard or Wright, or both.

On July 14, 1994, a Winnebago County grand jury returned an indictment against both Woodard and Wright, charging them with arson. For more than twenty-two months, plaintiffs defended the criminal charges and expended great sums of money for legal fees and retention of experts. It is alleged that during this entire period, all defendants actively participated in, and encouraged, the prosecution of plaintiffs with knowledge that the fire in question was caused by accidental means.

On April 7, 1995, Soyk and Henderson were present at the laboratory of plaintiffs' expert in Illinois for purpose of witnessing plaintiffs' expert conduct tests on the same samples tested by defendants. The tests revealed no presence of accelerants. In addition to witnessing these tests, all defendants were provided with copies of all of the test results. Notwithstanding this, American Family persisted in denying Woodard's claim. On May 2, 1996, the criminal charges against plaintiffs were dismissed by the Winnebago County State's Attorney.

Count I asserts a claim for malicious prosecution against all defendants. Count II alleges a claim for libel per se against all defendants based on defendants' false statements to the Winnebago County State's Attorney. Count III asserts a claim for fraud against defendants based on falsification of test results. Count IV asserts a claim for negligence, alleging that American Family failed to exercise reasonable care in selecting a testing laboratory and that Southeastern failed to exercise reasonable care in performing the tests. Count V, against American Family, alleges a claim for breach of contract based on American Family's refusal to allow Woodard's claim under the insurance contract. Count VI, against American Family, alleges a claim pursuant to 215 ILCS 5/155 for American Family's vexatious refusal to settle the claim. Last, Count VII alleges a claim against American Family under the theory of quantum meruit/unjust enrichment.

## DISCUSSION

In considering the motions to dismiss, the court accepts the allegations in the complaint as true and draws all reasonable inferences therefrom in a light most favorable to plaintiffs. *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir.1996). The motions will be denied unless it appears beyond doubt that plaintiffs can prove no set of facts consistent with the allegations in the complaint that would entitle them to relief *Id.*

### I. Southeastern & Henderson's Motion to Dismiss

#### A. Count I (Malicious Prosecution)

■ In order to establish a claim for malicious prosecution under Illinois law, a plaintiff must show: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Swick v. Liautaud*, 169 Ill.2d 504, 215 Ill.Dec. 98, 102, 662 N.E.2d 1238, 1242 (1996). Southeastern and Henderson move to dismiss Count I on the grounds that it fails to sufficiently allege the elements of malicious prosecution. Because these defendants challenge the sufficiency of each element, the court shall consider each element and the contentions relating thereto in turn.

■ As to the first element, a defendant must either have "initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co.*, 152 Ill.App.3d 578, 105 Ill.Dec. 471, 475, 504 N.E.2d 756, 760 (1st Dist.1986), *appeal denied*, 115 Ill.2d 539, 110 Ill.Dec. 455, 511 N.E.2d 427 (1987). Southeastern and Henderson contend that Count I fails to allege sufficient facts showing that they had an active role in the criminal proceedings against plaintiffs. They contend that the various allegations to the effect that they "actively participated in and encouraged the prosecution" and that they submitted the false test results to the Winnebago County State's Attorney are mere conclusions.

■ Under federal notice pleading standards, mere conclusions are usually sufficient as long as they provide minimal notice of the claims being asserted. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir.1995). Accepting the allegations of the complaint to be true, as the court must, the court cannot accept Southeastern and Henderson's contention that Count I fails to allege sufficient involvement in the prosecution. This element is alleged, and the mere fact that it is not supported with detailed

factual allegations is not a basis for dismissal. Nonetheless, the court cautions plaintiffs that the allegations as to this element must be made to the best of their knowledge based on reasonable inquiry. If the allegations are not accurate, or if further investigation during discovery reveals that such allegations can no longer be made in good faith, the court expects plaintiffs to act accordingly.

Southeastern and Henderson's contentions with respect to the second element are that plaintiffs' factual allegations show, as a matter of law, that they cannot establish the second element. Count I merely alleges that the Winnebago State's Attorney dismissed the charges. Southeastern and Henderson contend that a dismissal by the prosecutor does not operate as a favorable termination under Illinois law, relying in part on *Sutton v. Hofeld,* 118 Ill.App.3d 65, 73 Ill.Dec. 584, 586, 454 N.E.2d 681, 683 (1st Dist.1983). In response, plaintiffs contend that the second element can be predicated on dismissal of the charges by the prosecutor if the proceedings were terminated in a manner consistent with their innocence, relying on the recent Illinois Supreme Court decision *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill.Dec. 98, 103, 662 N.E.2d 1238, 1243 (1996). Plaintiffs, therefore, contend that the rule announced in *Swick* does not, as a matter of law, bar plaintiffs' claim.

In *Swick* the Illinois Supreme Court adopted the majority rule, holding that a "criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a nolle prosequi, unless the abandonment is for reasons not indicative of the innocence of the accused." *Id.,* 215 Ill.Dec. at 102–03, 662 N.E.2d at 1242–43. The court held that the "abandonment of the proceedings is not indicative of the innocence of the accused when the nolle prosequi is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* at 103, 662 N.E.2d at 1243. The burden of proving a favorable termi-nation, moreover, remains with the plaintiff even when the criminal charges are dismissed via a nolle prosequi; that is, in order to satisfy the burden of proof at trial, the plaintiff must show that the prosecutor dismissed the charges for reasons consistent with his or her innocence. The circumstances surrounding the abandonment of the criminal proceedings must "compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.*

The *Swick* decision renders the contentions in Southeastern and Henderson's motion and supporting brief moot, as it clearly displaces the rule applied in *Sutton.* In their reply brief, these defendants maintain that plaintiffs' allegations are insufficient, even under *Swick.* Count I alleges that the "criminal actions against Plaintiffs were judicially determined in favor of the Plaintiffs when the Winnebago County State's Attorney dismissed both indictments charging [plaintiffs] with Arson." Southeastern and Henderson contend that this is insufficient and that, at a minimum, plaintiffs should be required to plead that the dismissal of the indictments was entered "for reasons consistent with their innocence."

■ The court is of the opinion that plaintiffs' allegations in this regard are sufficient under federal notice pleading standards. The rule announced in *Swick* is that a dismissal of criminal charges via a nolle prosequi is a termination in favor of the accused, but in order to meet the burden of proof at trial, a plaintiff must establish that the nolle prosequi was entered for reasons consistent with his or her innocence. *Swick,* 215 Ill. Dec. at 103, 662 N.E.2d at 1243. The court does not find any basis for requiring a plaintiff in federal court to always plead facts which, if proven, would show that the dismissal was entered for reasons consistent with his or her innocence. Not only would that run afoul of notice pleading principles, it would also, in essence, require a plaintiff to meet his or her burden of proof at the pleading stage. Here, plaintiffs allege that the charges were dismissed by the prosecutor and that this constituted a termination in their favor. This is sufficient. Accordingly,

the court rejects Southeastern and Henderson's contentions with respect to the second element.

Southeastern and Henderson's contentions with respect to the probable cause and malice elements deserve little attention. Their contentions in this regard are that the allegations with respect to these elements are "conclusory" and that the complaint lacks sufficient factual allegations. As stated earlier, these are not valid criticisms of the complaint. Accordingly, these contentions are rejected.

Southeastern and Henderson's last contention with respect to Count I is that the facts alleged show that their actions were not the cause of plaintiffs' damages. They contend that the criminal proceedings against plaintiffs were instituted by a grand jury, not them, and that they therefore cannot be responsible for the damages that resulted from the criminal charges. This is really an argument relating to the initiation element, which this court has already determined to be sufficiently pleaded. Thus, this last contention is rejected. Accordingly, for the foregoing reasons, Southeastern and Henderson's motion to dismiss Count I is denied.

### B. Count II (Libel)

■ Southeastern and Henderson advance two contentions with respect to Count II. They contend it should be dismissed because it fails to specifically identify the libelous material and the precise date of publication. They contend that failure to allege either of these elements requires dismissal. Plaintiffs do not respond to either of these contentions.

■ Although the precise date of publication requirement appears to be exclusively an animal of state court pleading, the precise language or *"in haec verba"* requirement is employed by most courts in this district. *See, e.g., Buckley v. County of DuPage*, No. 88 C 1939, 1996 WL 10899, at *7 (N.D.Ill. Jan. 9, 1996); *Manion v. Lima Mem'l Hosp.*, No. 93 C 6138, 1994 WL 178316, at *3 (N.D.Ill. May 9, 1994); *Vantassell–Matin v.*

*Nelson*, 741 F.Supp. 698, 707 (N.D.Ill.1990); *Seaphus v. Lilly*, 691 F.Supp. 127, 134 (N.D.Ill.1988). The reason a plaintiff must, under notice pleading requirements, plead the specific words alleged to be actionable is that knowledge of the exact language used is necessary to form responsive pleadings. *Seaphus*, 691 F.Supp. at 134.

Although Count II alleges that Southeastern and Henderson caused false statements about plaintiffs to be published, it fails to specifically identify the alleged false statements. Plaintiffs do not advance any arguments in regard to this pleading deficiency. Accordingly, Southeastern and Henderson's motion to dismiss Count II is granted.

### C. Count III (Fraud)

■ Next, Southeastern and Henderson move to dismiss Count III on the basis that it fails to plead two essential elements—materiality and reliance. Plaintiffs' response is two-fold. First, they contend that the materiality element can be inferred from the facts alleged in Count III and that they did, in fact, rely on the test results. This reliance, according to plaintiffs, took the form of forgoing their rights under the insurance contract and not pursuing their claims until after the misrepresentation had been discovered.[1] In the alternative, plaintiffs request leave to amend their complaint to cure these alleged deficiencies. In response to the latter, Southeastern and Henderson contend that leave to amend should not be granted because the well-pleaded facts show that plaintiffs did not rely on the test results, but rather, contested those results continuously throughout the period relevant to the complaint.

■ Rule 9(b) of the Federal Rules of Civil Procedure requires the circumstances constituting fraud to be stated with particularity. A sufficient level of factual support may be found where the circumstances are pleaded in detail. Generally, this is satisfied when "who, what, when, where and how" are

---

**1.** It is not clear to the court what, if any, rights Wright had under the insurance agreement. According to the allegations in the complaint, only Woodard was the insured. Plaintiffs do not discuss this issue, nor have Southeastern and Henderson raised it as an issue at this stage in the proceedings.

alleged. *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir.1996). Materiality and reliance are essential elements to a fraud claim under Illinois law. *See Fitzpatrick v. ACF Properties Group, Inc.*, 231 Ill.App.3d 690, 172 Ill.Dec. 657, 671, 595 N.E.2d 1327, 1341 (2d Dist.) (reciting elements of common law fraud), *appeal denied*, 146 Ill.2d 626, 176 Ill.Dec. 797, 602 N.E.2d 451 (1992). Although the court agrees with plaintiffs that, based on the factual allegations in the complaint, materiality can be easily implied, it cannot agree that reliance can be so inferred as well. Although it is alleged that defendants' misrepresentations regarding the test results were designed to induce plaintiffs to forgo their rights under the insurance policy, nothing in Count III indicates that plaintiffs were, in fact, induced. In fact, the allegations suggest otherwise. Not only did Woodard file a claim under the policy, but she and Wright retained their own experts to test the samples and contested the criminal charges brought against them. These facts controvert rather than support the element of reliance. Because Count III does not plead that plaintiffs relied to their detriment on defendants' misrepresentations, it is properly subject to dismissal. Accordingly, Southeastern and Henderson's motion to dismiss is granted with respect to Count III.

 The next issue the court must address at this juncture is whether plaintiffs should be permitted to amend their complaint or whether the well-pleaded facts presently alleged show that they cannot amend their complaint to state a cause of action and be in compliance with Fed.R.Civ.P. 11. While a plaintiff can plead herself out of court by alleging facts which show, as a matter of law, that she cannot prevail on a claim, *see Jackson*, 66 F.3d at 153–54, the court cannot conclude that this is one of those cases. There was almost a one and one-half year period between Woodard's claim under the policy and the testing of the samples at plaintiffs' expert's laboratory. The allegations in the complaint do not rule out the possibility that plaintiffs relied upon Southeastern's test results during this period. Accordingly, the court shall permit plaintiffs to amend their complaint. In so doing, howev-

er, it reminds plaintiffs that any amendment should and must comply with the requirements of Rule 11.

## D. Count IV (Negligence)

Southeastern and Henderson contend that Count IV should be dismissed because they owed no duty of care to plaintiffs. These defendants contend that the complaint merely alleges a duty in "conclusory" fashion and that there are no facts which could establish a legal duty. In response, plaintiffs contend that a duty exists by virtue of their contractual relationship with American Family, American Family's contractual relationship with Southeastern and because it was foreseeable to all defendants that a lack of reasonable care would adversely affect plaintiffs. In their reply brief, Southeastern and Henderson contend that plaintiffs have failed to rebut their contention that no legal duty exists because plaintiffs do not provide any legal authority showing that such a duty exists.

 At the outset, the court notes that none of the parties have provided the court with a case specifically addressing this issue. Thus, the court can hardly fault plaintiffs alone for failing to produce any legal authority. Whether a duty exists is a question of law which depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Gouge v. Central Illinois Pub. Serv.*, 144 Ill.2d 535, 163 Ill.Dec. 842, 846, 582 N.E.2d 108, 112 (1991). Thus, the mere fact that the complaint alleges that defendants owed plaintiffs a legal duty, a legal conclusion, need not be accepted by the court and is subject to this court's own determination. In considering whether a duty exists, the court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on the defendant. *Id.*

 Considering first the relationship between Woodard and Southeastern (and Henderson), the court distinguishes this case from the situation where two parties contract

with the intent to benefit a third party. There is no showing that American Family had the samples from Woodard's home independently tested for Woodard's benefit. If anything, the opposite was true. The cause of the fire would have been of no concern to Woodard—her only concern was receiving the benefits of her insurance policy. Rather, it was American Family who was concerned about the cause, for if the fire was deliberately caused by Woodard, American Family would not be obligated to pay her for her loss. If Southeastern's tests did not reveal evidence of foul play, then American Family could rest easy knowing it was paying a valid claim. Conversely, if the tests revealed otherwise, then American Family would have a basis for denying Woodard's claim. In either outcome, American Family was the only intended beneficiary of Southeastern's tests. Although it is true that, in a metaphysical sense, Woodard stood to benefit from American Family and Southeastern's contract in the event the tests failed to detect the presence of accelerants, such a benefit would have been merely incidental to, and not intended by, American Family and Southeastern's contractual relationship. Thus, this case is readily distinguishable from those decisions finding a tort duty owed by virtue of the plaintiff's status as an intended third-party beneficiary to a contract. *See, e.g., McLane v. Russell,* 131 Ill.2d 509, 137 Ill. Dec. 554, 558, 546 N.E.2d 499, 503 (1989) (holding that an attorney may owe a duty to a third party if that party can show it was the intended beneficiary of the attorney-client relationship).

Not only is there no indication that Woodard was an intended beneficiary of American Family and Southeastern's contract, there is no allegation that Woodard was known to Southeastern or that Southeastern knew that negligent testing of the samples would result in damages to Woodard by her being branded as an "arsonist." Nor could Southeastern be expected to know the circumstances behind the samples it was asked to test. A person could have materials tested for any number of reasons, and it is not the job of a laboratory asked to conduct such tests to inquire as to the intended use of the results. Not only that, but the mere presence of accelerants would not, in and of itself, identify the person or persons responsible for the fire. That is, the accelerant could have been used by any person, not just the insured, and it would be unreasonable to expect a laboratory to anticipate the myriad of bizarre possibilities with respect to such matters. In short, the relationship between Woodard and Southeastern is such that it is not reasonably foreseeable that Woodard would be injured by Southeastern's negligence in the way alleged, nor can the court find that there was even a reasonable likelihood of such injury.

In addition to this type of injury not being reasonably foreseeable or likely, the court also finds that the magnitude of the burden of guarding against such injury would be great. Woodard would have Southeastern be responsible for ensuring that the samples tested were the ones actually taken from her mobile home. To impose such a burden would require every laboratory engaged in such a business play the role of investigator, in addition to scientist. There simply is no justification for imposing such a far-reaching obligation on Southeastern.

There is another reason for not recognizing a duty under these circumstances. Woodard had a number of remedies at her disposal which protected her from Southeastern's negligence. Woodard was free to contest the test results and submit the test results of her own experts to American Family. In fact, she did so in this case, albeit unsuccessfully. Moreover, if she was unsuccessful with American Family, she was also free (as she also did in this case) to file suit against American Family for breach of contract. No one was in a better position to know whether Woodard deliberately caused the fire than Woodard herself, and she had a number of available avenues through which she could protect herself from Southeastern's negligence.

This court's conclusion that no duty exists in this case is reinforced by *Rardin v. T & D Mach. Handling, Inc.,* 890 F.2d 24 (7th Cir. 1989). In *Rardin* the plaintiff was the purchaser of a printing press. *Id.* at 25. Pursuant to the sale contract, it was the seller's responsibility to dismantle the printing press

and ship it to plaintiff's place of business. *Id.* The seller hired the defendant to dismantle the press, who in the course of doing so, damaged it, causing plaintiff to lose business profits. The plaintiff sought recovery against the defendant in tort for the defendant's negligence. In discussing whether a duty existed between the plaintiff and defendant, the court employed the following analogy:

> A takes his watch to a retail store, B, for repair. B sends it out to a watchmaker, C. Through negligence, C damages the watch, and when it is returned to A via B it does not tell time accurately. As a result, A misses an important meeting with his creditors. They petition him into bankruptcy. He loses everything. Can he obtain damages from C, the watchmaker, for the consequences of C's negligence?

*Id.* at 26. The court answered the hypothetical question no, based on the finding that the relationship between A and C was not such that C would owe A any duty of care in repairing the watch. *Id.* In rejecting such "for-want-of-a-nail-the-kingdom-was-lost" liability, the court grounded its decision, both as to the hypothetical and the actual controversy before it, on two principles of Illinois law. The first was that no duty should be recognized because the tortfeasor in each instance was not in a position to assess the consequences of its negligence. *Id.* at 26–27. The second principle was that the *Moorman* doctrine, derived from *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) and subsequent Illinois Supreme Court decisions, precludes the recovery of damages in tort for "purely economic loss." *Rardin,* 890 F.2d at 27–8.

Although the latter principle has no efficacy here, as plaintiffs seek damages solely for injury to their reputation, the former principle does. Southeastern was in no position to assess the consequences of its negligence with regards to Woodard. The court, therefore, holds under the circum-

stances here that an independent laboratory retained by an insurance company to test materials for the purpose of determining the cause of the insured's loss does not owe a duty of reasonable care to the insured in collecting, handling and testing those materials or in reporting those tests to the insurer. Accordingly, because Woodard cannot recover damages from Southeastern based on a tort theory of negligence, the court grants Southeastern and Henderson's motion with respect to her claim against them in Count IV.[2]

As to Wright's claim against Southeastern and Henderson in Count IV, the court has little difficulty in finding that no duty should exist. Wright was not the owner of the mobile home, he was not the insured and he had no claim before American Family. In addition, there is no allegation that Wright was known to Southeastern. Thus, the relationship between Wright and Southeastern is even more tenuous than Woodard's relationship with Southeastern. On this basis, therefore, the court finds that Southeastern and Henderson owed no duty to Wright. Accordingly, the court grants their motion as to Wright's claim against them in Count IV as well.

## II. American Family & Soyk's Motion to Dismiss

### A. Count I (Malicious Prosecution)

American Family and Soyk offer no reasons beyond those offered in Southeastern and Henderson's motion as to Count I. American Family and Soyk's contentions consist of nothing more than arguing that plaintiffs have not pleaded enough facts as to each element of this claim. For the reasons stated earlier in this opinion, these contentions are rejected. Accordingly, American Family and Soyk's motion to dismiss Count I is denied.

---

**2.** Although not cited by any of the parties, the court notes that there is one Illinois appellate court decision which is arguably on point with the issue before this court. *See Stinson v. Physicians Immediate Care, Ltd.,* 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930 (2d Dist.1995).

The duty recognized in *Stinson,* however, appears to be based on a third-party beneficiary theory. *Id.* 207 Ill.Dec. at 99, 646 N.E.2d at 933. As discussed above, no such theory is applicable here.

### B. Count II (Libel)

American Family and Soyk advance two reasons for dismissing Count II. First, these defendants contend that the action is barred by the one-year statute of limitations applicable to libel actions, 735 ILCS 5/13–201. Second, they contend that their alleged statements to the Winnebago County State's Attorney are privileged and cannot provide a basis for a civil action. Plaintiffs do not respond to either contention.

 The failure to affirmatively plead compliance with the applicable statute of limitations is not a basis for dismissal in federal court. *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 719 (7th Cir.1993), *cert. denied*, 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994). Where a plaintiff, however, pleads facts that show her claim is time-barred, she has, in effect, pleaded herself out of court. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir.1995). Under Illinois law, actions for libel must be commenced within one year after the cause of action accrues. 735 ILCS 5/13–201. The discovery rule applies to this limitation period, which means that the action accrues when the plaintiff knew or should have known of the defamatory remark or statement. *See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill.2d 129, 334 N.E.2d 160, 164 (1975).

 American Family and Soyk contend that this action accrued at about the time the information was given to the Winnebago County State's Attorney (a date which is not specified in the complaint and is therefore unknown), or, at the latest, July 14, 1994, when the grand jury indicted plaintiffs for arson. The problem with this argument is that neither of these events necessarily means that plaintiffs were aware of the alleged defamatory statement. That is, the court cannot infer from these events alone that plaintiffs were aware that defendants provided false information to law enforcement authorities. There are, however, other facts that are alleged which show this action is time-barred. It is alleged that the publication of the false statements was ongoing from the time plaintiffs were indicted to the time the charges were dismissed on May 2, 1996. It is further alleged that plaintiffs had their own experts retest the materials in the presence of defendants on April 7, 1995, to show defendants that their previous tests were false, and that defendants continued to publish the false statements by denying Woodard's claim and encouraging the prosecution. It is evident from these allegations that plaintiffs were aware of the defamatory remarks and of defendants' involvement in the prosecution by no later than April 7, 1995. This action was filed on May 20, 1996, over a year later. Accordingly, this action is time-barred.

 Even if this court did not find this claim time-barred, it would nonetheless grant American Family and Soyk's motion, as the alleged defamatory remarks fall under an Illinois privilege. Under Illinois law, statements made to law enforcement officials regarding an alleged commission of a crime are absolutely privileged and no civil action for libel based thereon can be maintained. *Layne v. Builders Plumbing Supply Co.*, 210 Ill.App.3d 966, 155 Ill.Dec. 493, 497, 569 N.E.2d 1104, 1108 (2d Dist.1991). Thus, the mere transmission of the test results and any other information relating to the alleged arson to the Winnebago County State's Attorney cannot be grounds for a libel action. Accordingly, for all these reasons, American Family and Soyk's motion to dismiss Count II is granted. Because plaintiffs do not offer any basis for amending this claim, Count II is dismissed with prejudice.[3]

### C. Count III (Fraud)

American Family and Soyk move to dismiss Count III on the grounds that plaintiffs'

---

**3.** Although Southeastern and Henderson moved to dismiss this count on other grounds, the foregoing defects apply to the claims asserted against them in Count II equally as well. Thus, Count II is dismissed with prejudice as to all defendants. *See D'Last Corp. v. Ugent* 863 F.Supp. 763, 769– 70 (N.D.Ill.1994) (dismissing complaint as to party who did not join in the motion where flaws in complaint were claim-oriented and applied to both moving and non-moving defendants), *aff'd*, 51 F.3d 275 (7th Cir.1995).

fraud claim against them is preempted by 215 ILCS 5/155(1) and that Count III fails to allege plaintiffs relied on defendants' misrepresentations. With respect to the former contention, American Family and Soyk rely on *Kush v. American States Ins. Co.*, 853 F.2d 1380, 1385 (7th Cir.1988), which held that any claim alleging nothing more than the conduct proscribed by section 155 is preempted by the statute. American Family and Soyk contend that the allegations in Count III merely amount to an unreasonable denial of coverage, conduct which is proscribed by section 155. In response, plaintiffs contend that Count III alleges more than a mere refusal to settle a claim and that it therefore is not preempted. As to the failure to allege reliance, plaintiffs contend that the reliance element is sufficiently alleged. Plaintiffs also seek leave to amend so as to properly plead the reliance element.

■ Prior to the completion of the briefing schedule in this case, the Illinois Supreme Court decided *Cramer v. Insurance Exch. Agency*, 174 Ill.2d 513, 221 Ill.Dec. 473, 675 N.E.2d 897 (Ill.1996). In *Cramer*, the court was presented with the issue of whether section 155 preempts common law torts arising out of an insurance company's delay in settling a claim. The court held that the statute merely provides an extra-contractual remedy for insurer misconduct that is vexatious and unreasonable and that it was not intended to displace well-established tort actions, including common law fraud. *Id.* at 524, 221 Ill.Dec. at 478, 675 N.E.2d at 902. Thus, an insurer's conduct may give rise to both a breach of contract action as well as a separate tort action, provided the plaintiff can establish the elements of that tort. *Id.* at 527, 221 Ill.Dec. at 479, 675 N.E.2d at 903. In light of the Illinois Supreme Court's recent decision, *Kush* no longer provides the rule of decision. Because section 155 does not preempt common law torts, but merely supplements an insured's contractual remedy, defendants' first contention is rejected.

Plaintiffs must nonetheless plead all the elements of fraud, and as this court has already determined in Section I of this opinion, plaintiffs have not alleged that they relied on defendants' misrepresentations. Accordingly, American Family and Soyk's motion to dismiss Count III is granted. Plaintiffs shall be granted leave to amend this claim, but the court reminds plaintiffs of the admonitions made in Section I(C) of this opinion.

### D. Count IV (Negligence)

American Family and Soyk move to dismiss Count IV on the grounds that they owed no duty to plaintiffs in selecting a laboratory and that 215 ILCS 5/155(1) preempts all common law tort actions against an insurer. With regard to this latter contention, American Family and Soyk contend that Count IV is merely based on their bad faith conduct, and as such, cannot be maintained under the Seventh Circuit's decision in *Kush*. Plaintiffs contend that a duty is properly alleged and that section 155 does not preempt torts which require proof beyond a mere bad faith or vexatious refusal to settle. As it found in its discussion of Count III, *see infra* Section II(C), there is no basis for finding a duty of care owed to Wright. He has no relationship with any of the defendants, contractual or otherwise, and plaintiffs have not provided the court with, nor is the court aware of, any case law which would support finding such a duty. Accordingly, the court grants American Family and Soyk's motion as it relates to any claim Wright is asserting against them in Count IV. Woodard's claim, however, requires a different analysis.

■ Although American Family and Soyk's reliance on *Kush* is misplaced, they are nonetheless entitled to a dismissal of Woodard's claim against them in Count IV. While the Illinois Supreme Court in *Cramer* held that section 155 did not preempt common law torts, it also held that there is no common law tort for bad faith or unreasonable and vexatious conduct. *Cramer*, 174 Ill.2d at 527, 221 Ill.Dec. at 479, 675 N.E.2d at 903. Looking beyond the legal theory attached to the conduct forming the basis of Woodard's claim against American Family and Soyk, *see id.*, the court concludes that she has alleged no more than a mere breach

of an implied duty of good faith and fair dealing by American Family and Soyk under the insurance agreement. Whatever duty of care American Family and Soyk owed Woodard with respect to processing her claim, it arose out of the contract between them. The complained of conduct alleged in Count IV merely amounts to a breach of that duty of care. The Illinois Supreme Court in *Cramer* clearly foreclosed a plaintiff from maintaining such a claim as an independent tort action, as such a claim would be nothing more than a claim of bad faith. *Id.* at 527, 221 Ill.Dec. at 479, 675 N.E.2d at 903. Thus, Woodard's claim in Count IV against American Family and Soyk is dismissed.

### E. Count V (Breach of Contract)

 American Family and Soyk move to dismiss Count V on the grounds that it is barred by the one-year limitations period contained in the insurance agreement. In response, Woodard concedes this action was commenced well beyond the one-year limitations period but contends that the doctrines of equitable estoppel and fraudulent concealment operate to bar defendants from raising the limitations period as a defense. Woodard seeks leave to amend the complaint to add such allegations should this court determine the present allegations to be insufficient.

The court does not find Woodard's allegations sufficient to support a tolling of the limitations period. The mere fact that Woodard had to defend a criminal prosecution against her does not, in and of itself, explain why she was prevented from filing suit. Similarly, there are no allegations that defendants fraudulently concealed matters which prevented her from timely filing suit. In fact, as the court has already noted in its discussion of the fraud claim, the allegations suggest that Woodard contested the test results throughout the period relevant to this complaint. Be that as it may, the court shall grant Woodard leave to amend the complaint. In so doing, however, the court reiterates its admonitions regarding Rule 11. Accordingly, Count V is dismissed without prejudice.

### F. Count VI (Vexatious Refusal to Settle)

The sole contention made by American Family and Soyk with respect to this count is that once this court finds Count V barred by the limitations period, Count VI should also be dismissed. Woodard did not respond to this contention. Because a claim under section 155 is dependent upon a valid claim for breach of contract, it is properly dismissed. Accordingly, defendants' motion is granted as to Count VI.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part. Counts II and IV are dismissed with prejudice as to all defendants. Counts III, V and VI are dismissed without prejudice. The motions are denied in all other respects. Plaintiffs are granted leave to file an amended complaint, if necessary, within twenty-one (21) days of this order, after which defendants shall have twenty (20) days to answer or otherwise plead.